# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-2264

MICHAEL RICHMOND,

*Petitioner-Appellant,*

v.

JOSEPH SCIBANA, Warden, Federal Correctional
Institution at Oxford, Wisconsin,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-C-131-S—**John C. Shabaz**, *Judge.*

———————

ARGUED SEPTEMBER 28, 2004—DECIDED OCTOBER 19, 2004

———————

Before BAUER, EASTERBROOK, and MANION, *Circuit
Judges.*

EASTERBROOK, *Circuit Judge.* "The Bureau of Prisons
shall, to the extent practicable, assure that a prisoner serv-
ing a term of imprisonment spends a reasonable part, not
to exceed six months, of the last 10 per centum of the term
to be served under conditions that will afford the prisoner
a reasonable opportunity to adjust to and prepare for the
prisoner's re-entry into the community. The authority pro-
vided by this subsection may be used to place a prisoner in
home confinement." 18 U.S.C. §3624(c). In December 2002

the Department of Justice concluded (relying on an opinion issued by the Office of Legal Counsel) that the "not to exceed" proviso in §3624(c) limits the Bureau's discretion under 18 U.S.C. §3621(b) to designate an inmate's place of confinement, and that as a result prisoners are ineligible for community or home confinement before the last six months or 10% of their sentences, whichever is shorter. Because the Bureau is a unit within the Department of Justice, the OLC's opinion governs the Bureau's conduct.

Inmates throughout the nation have challenged the new interpretation, which one circuit recently found to be erroneous. See *Goldings v. Winn*, 2004 U.S. App. LEXIS 19012 (1st Cir. Sept. 9, 2004) (holding that §3621(b) entitles the Bureau of Prisons to place inmates in community confinement for any or all of their sentences, §3624(c) notwithstanding). Michael Richmond filed a petition for habeas corpus, see 28 U.S.C. §2241, claiming entitlement to consideration for less-restrictive confinement. The district court dismissed his petition because Richmond had never asked the Warden or anyone else at the Bureau of Prisons to place him in community confinement before the last 10% of his sentence and thus had not exhausted the administrative remedies available under 28 C.F.R. §§ 542.13 to 542.15.

Richmond is approaching the statutory milestones—he enters the final six months of his sentence on December 14, 2004, and the last 10% on February 3, 2005—so judicial relief must come quickly if he is to enjoy an opportunity for earlier consideration. Looming dates excuse exhaustion, Richmond says; anyway, he asks, what good would a post-2002 request have done given the OLC's legal opinion? As the Bureau sees matters, however, this is a challenge to prison conditions covered by the exhaustion requirement in the Prison Litigation Reform Act, 42 U.S.C. §1997e(a). *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999), holds that courts will not try to sift futile from effective remedies for this purpose; instead of asking

judges to guess, prisoners must give it a go. *Booth v. Churner*, 532 U.S. 731 (2001), adds that exhaustion is required even if the administrative process cannot supply the relief the prisoner seeks. To get anywhere, Richmond must persuade us that §1997e(a) does not apply. His theme on appeal is that this is a genuine §2241 proceeding unaffected by the PLRA. See *Walker v. O'Brien*, 216 F.3d 626, 633-37 (7th Cir. 2000).

Now it is doubtful that the choice between "challenge to prison conditions" and "§2241 proceeding" makes much difference to Richmond. A common-law exhaustion rule applies to §2241 actions even though §1997e(a) does not, and although the common law allows of exceptions the hurdle is high. Compare *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004), with *United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003) ("futility excuses will not go far"). The press of time is Richmond's fault. Although the Bureau of Prisons notified inmates promptly of the OLC's decision, Richmond did nothing for the next 16 months until March 5, 2004, when he filed suit. A prisoner cannot manufacture exigency by tarrying.

Application to the Bureau need not have been a pointless exercise. Richmond might have asked it to exempt current inmates, a possibility that the OLC did not consider. (In this litigation Richmond contends that the Ex Post Facto Clause precludes application of the OLC's opinion to persons whose crimes occurred before December 2002. As a constitutional argument this is not promising; the *statutes* predate his offense. But as a request for a grandfather clause in the new approach, Richmond's position may fare better and should have been presented to the Bureau.) Another outcome could have been a decision that Richmond is unsuitable for that placement *independent* of the OLC's statutory interpretation. Such a decision would have avoided any need for this litigation. By withholding a request for administrative action, Richmond may well have trumped up a

legal issue. We cannot be sure, so it is not possible to declare that he seeks an advisory opinion; still, reducing uncertainty is an important benefit of an administrative request.

What is more, it is hard to see why we should strain to find an opportunity to address the correctness of the OLC's opinion, when Richmond probably has nothing to gain by a conclusion that §3621(b) grants the Bureau of Prisons more discretion than the Office of Legal Counsel believed. To say that the Bureau has discretion is not to say that it must act favorably on any inmate's request.

Consider 18 U.S.C. §3621(e)(2)(B), which permits the Bureau of Prisons to reduce the time served by a prisoner who completes a substance-abuse program. Persons convicted of "crimes of violence" are ineligible, and the Bureau concluded that anyone who possessed a weapon in connection with a crime was covered by that exception. After several appellate courts held that this was a legal blunder—that there is a difference between the inmate's real offense behavior and the crime of conviction, and that only the latter matters to eligibility—the Bureau revised its policies to exclude all gun-toting felons as a matter of discretion. The Supreme Court held that the new policy is lawful, because a power to deny participation case-by-case implies a power to exercise discretion categorically and establish a rule that affects all situations. See *Lopez v. Davis*, 531 U.S. 230 (2001). See also *Bush v. Pitzer*, 133 F.3d 455 (7th Cir. 1997).

That pattern is being repeated for §3621(a) and §3624(c). Although several courts have held that the Bureau has more discretion than the OLC thought, the Department of Justice has decided not to exercise in prisoners' favor whatever dispensing power it possesses. It has proposed a rule that inmates will be placed in community or home confinement only during the last 10% of their sentences. See 69 Fed. Reg. 51213 (Aug. 18, 2004) (adding a new 28 C.F.R. §570.21).

The rule has not yet been promulgated; the comment period lasts until October 18, 2004. Unless comments lead to a change, however, the Bureau will defer Richmond's transfer until February 3, 2005, or later, no matter how §3621(b) is understood. Given the holding of *Lopez* that discretion may be exercised by rule as well as by person-specific decision, see also *American Hospital Ass'n v. NLRB*, 499 U.S. 606 (1991), Richmond is unlikely to obtain a judicial order directing the Bureau to place him in community confinement any time before February 3, 2005. Cf. *Reno v. Koray*, 515 U.S. 50, 61 (1995).

The difference between a claim of entitlement to be released, and an opportunity to be considered for release, also affects the choice between §2241 and a mundane civil action—here, under the Administrative Procedure Act for review of the policy that rests on the OLC's opinion. A placement decision itself is not open to challenge under the APA, see 18 U.S.C. §3625, but Richmond does not contest his current placement; he contests only the rules that will be used to decide where he should serve the last few months of his time.

The parties' briefs devote considerable energy to the question whether differences between a minimum-security prison camp (where Richmond now is being held) and community confinement are sufficiently great that Richmond can be deemed to challenge the fact of custody, rather than simply the conditions of confinement acknowledged to be lawful. See, e.g., *Moran v. Sondalle*, 218 F.3d 647 (7th Cir. 2000); *Graham v. Broglin*, 922 F.2d 379 (7th Cir. 1991). As should be clear by now, that's the wrong perspective, for victory in this litigation would not entitle Richmond to any change in the duration or even the location of his confinement.

A judge could do no more than determine the extent of the Bureau's discretion to make placement decisions; the substance of any eventual decision is not at issue. Parole litigation supplies a helpful analogy: a prisoner claiming a

right to *release* on parole must use §2241 (or §2254 for a state prisoner); but a prisoner claiming that parole officials are apt to use incorrect rules when resolving a future application must use the APA (or 42 U.S.C. §1983 for a state prisoner). See, e.g., *White v. Henman*, 977 F.2d 292 (7th Cir. 1992); *Clark v. Thompson*, 960 F.2d 663 (7th Cir. 1992); *Walker v. Prisoner Review Board*, 694 F.2d 499 (7th Cir. 1982).

Richmond's suit therefore seems to us on the APA side of a line that, as *Clark* and *Graham* discuss, has been hazy ever since *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Wolff v. McDonnell*, 418 U.S. 539, 554-55 (1974). A brighter line, under which all challenges to the validity of criminal convictions and the length of confinement fall under §2241, §2254, and §2255, while challenges dealing with the conditions of confinement (maximum vs. minimum custody, solitary vs. general population, prison versus parole and other conditional release) fall under other heads of civil litigation, would have much to commend it. But we cannot adopt a bright line while the Supreme Court adheres to the subtle distinction between *Preiser* (challenge to fact or duration of custody must proceed in habeas corpus) and *Wolff* (challenge to rules affecting conditions of custody, and potentially affecting duration of a particular kind of custody, proceeds as ordinary civil suit unless conditions of custody change so substantially that challenge really is to "fact" of custody). All we can do is apply the standard sensibly and consistently.

Consistency implies treating a challenge to rules that affect placement in community confinement the same way as rules that affect placement in parole systems. The upshot is that §2241 does not furnish the appropriate means to contest the Bureau's understanding of §3624(c). We recognize that *Goldings* proceeded under §2241, as did *Lopez*, but the choice between §2241 and the APA was not brought to either court's attention by the litigants or discussed in either opinion, so neither decision contains a holding on the subject. See *Pennhurst State School & Hospital v. Halderman*,

465 U.S. 89, 119 & n.29 (1984); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37-38 (1952); *Webster v. Fall*, 266 U.S. 507, 511 (1925).

Richmond has not followed any of the rules applicable to prisoners' general civil litigation—not only exhaustion under §1997e(a) but also payment of the full docket fee, screening through of the three-strikes rule, and the other differences between requests for habeas corpus and general civil litigation. These many differences have led us to say that a petition for habeas corpus may not be "converted" to a civil suit, nor may district judges convert suits in the other direction. See *Copus v. Edgerton*, 96 F.3d 1038 (7th Cir. 1996); *Moore v. Pemberton*, 110 F.3d 22 (7th Cir. 1997). Instead the judge should leave that option to the litigants, after they know what is at stake. Cf. *Castro v. United States*, 540 U.S. 375 (2003). In this situation, however, there is no need for a remand so that Richmond may choose. If he were to stick with §2241, the petition would have to be dismissed because §2241 is the wrong section; if he were to elect the APA, the petition would have to be dismissed under §1997e(a) for failure to exhaust administrative remedies. As the two come to the same thing, the district court's judgment must be

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*