# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3490

_____

Dennis Fults,                                    *
                                                 *
     Plaintiff - Appellee,                      *
                                                 *   Appeal from the United States
v.                                               *   District Court for the Eastern District
                                                 *   of Arkansas.
Linda Sanders, Warden, FCI - FC,                 *
                                                 *
     Defendant - Appellant.                     *

_____

Submitted: December 15, 2005
Filed: April 6, 2006

_____

Before RILEY, LAY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

     The Bureau of Prisons (BOP) passed a regulation that limits the portion of an inmate's sentence that can be served in a Community Corrections Center (CCC), commonly known as a halfway house. Dennis Fults, an inmate who wished to be transferred to a CCC, petitioned for a writ of habeas corpus arguing that this regulation is invalid. The district court[1] struck down the regulation on the basis that it conflicts with 18 U.S.C. §3621(b), and the BOP appealed. We affirm.

---

[1]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

I.

On January 21, 2005, Fults was sentenced to an eighteen-month term of incarceration for concealment of assets in violation of 18 U.S.C. § 152. According to a BOP regulation put into place on February 14, 2005, Fults would have become eligible for pre-release placement in a CCC on January 6, 2006, if he earned all possible credits for good conduct.[2] This regulation limits Fults' time in a CCC to ten percent of his sentence–forty-seven days. Fults sought to be transferred to a CCC for 180 days. Fults filed suit contending that the regulation misconstrues the discretion

_____

[2] 28 C.F.R. § 570.20 states:

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

28 C.F.R. § 570.21 states:

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

granted to the BOP by § 3621(b) and violates the Ex Post Facto Clause. Solely on the basis of the former argument, the district court ordered the BOP to consider in good faith whether to transfer Fults to a CCC to serve the final 180 days of his sentence.

## II.

Prior to December 2002, the BOP allowed an inmate to be placed in a CCC for up to six months, regardless of the total length of the inmate's sentence. On December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with § 3624(c) which, in its opinion, limited an inmate's placement in a CCC to the lesser of six months or ten percent of the inmate's sentence. Section 3624(c) states:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of this statute, but we later rejected that interpretation and invalidated the December 2002 policy in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004). We stated that the BOP has the discretion to transfer an inmate to a CCC at any time, but only the duty to consider a transfer to a CCC in the last six months of a sentence. Id. at 845-47.

In February 2005, in response to Elwood and a similar decision from the First Circuit, Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004), the BOP created new regulations governing the placement of inmates in CCCs. These regulations state that

the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement only . . . during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.20-21. The BOP contends that this exercise of discretion is permissible under § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence--
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

## III.

"We review the district court's statutory interpretation de novo." <u>Haug v. Bank of America, N.A.</u>, 317 F.3d 832, 835 (8th Cir. 2003). Although an agency's interpretation of a statute that it is entrusted to administer is generally entitled to deference, <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 844 (1984), if the intent of Congress is clear, there is no need to defer to the agency's interpretation. <u>Haug</u>, 317 F.3d at 835, 838-39. We believe that the BOP's interpretation of the statute is contrary to the statute's unambiguous language. As such, we do not give deference to the BOP's interpretation.

## IV.

There is no question that §3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment. This case requires us to determine whether that discretion can be exercised on a categorical basis. The BOP argues that its exercise of discretion is consistent with the Supreme Court's opinion in <u>Lopez v. Davis</u>, 531 U.S. 230 (2001).

In <u>Lopez</u>, the Supreme Court addressed the BOP's categorical exercise of discretion under 18 U.S.C. § 3621(e)(2)(b), which stated that an inmate convicted of a non-violent offense could have his or her period of incarceration reduced after successfully completing a drug treatment program. The BOP had issued a regulation excluding inmates from early release under this provision if they were convicted of non-violent crimes involving firearms. 28 C.F.R. § 550.58(a)(1)(vi)(B). The Supreme Court upheld the regulation stating that nothing in the statute at issue prohibited "categorical exclusions." <u>Lopez</u>, 531 U.S. at 243.

We believe that <u>Lopez</u> is distinguishable from this case. As the <u>Lopez</u> Court noted, "constraints . . . requiring the BOP to make individualized determinations based only on postconviction conduct–are nowhere to be found in § 3621(e)(2)(b)." <u>Id.</u> at 241-42.[3] In fact, the subsection at issue in <u>Lopez</u> offers no specific criteria to be considered–other than the overarching criterion that only nonviolent offenders are eligible for early release. Accordingly, the BOP can make categorical decisions within that class of offenders without violating that subsection.

Subsection 3621(b) is different from § 3621(e)(2)(b) in that the former lays out criteria that must be considered by the BOP in making placement determinations. Three of these factors–the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence–cannot be fully considered without evaluating inmates on a case-by-case basis. Accordingly, <u>Lopez</u>, which dealt with a subsection void of any individual criteria, is not controlling.

The Third Circuit is the only Court of Appeals to have ruled on the validity of the BOP's February 2005 regulation. <u>See</u> <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d 235 (3d Cir. 2005). In holding that the regulation was invalid, the <u>Woodall</u> court said:

---

[3]18 U.S.C. § 3621(e)(2)(b) states: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."

The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Woodall, 432 F.3d at 244.

The BOP offers a number of counter-arguments. First, it contends that § 3621(b) provides the BOP with the discretion to consider the enumerated factors, but not the duty to do so. Second, it claims that it did consider the enumerated factors in making the decision to categorically exclude from CCC placement those inmates not within the last ten percent of their sentences. Third, it asserts that it will consider the enumerated factors on an individualized basis when making placement decisions for inmates who are in the last ten percent of their sentences. These arguments were all also raised in the Woodall case, and we reject them for the same reasons discussed at length in that opinion. Woodall, 432 F.3d at 245-51. Those reasons are summarized below.

The BOP's first argument hinges on the use of the word "may," rather than "shall," at the beginning of § 3621(b).[4] We agree with the Woodall Court that the

---

[4]18 U.S.C. § 3621(b) states: "The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering . . . ."

term "may" describes the BOP's discretionary ability to place an inmate in any penal facility that meets the appropriate standards. The term does not modify the BOP's duty to consider the five enumerated factors when making placement decisions. The word immediately preceding the factors is "considering." This implies that the BOP must consider all of the factors that follow. This implication is bolstered by the statute's legislative history as discussed in Woodall. Woodall, 432 F.3d at 245-46. Nothing in § 3621(b) suggests that consideration of the factors is optional.

The BOP's contention that it considered all of the factors in making its categorical exercise of discretion is without merit. Three of the five factors relate to an inmate's individual circumstances. Accordingly, it would not have been possible for the BOP to consider all of the factors when it promulgated the regulations.

The BOP's most persuasive argument is that the § 3621(b) factors need not be considered until the BOP considers whether a specific individual should be transferred. This interpretation of the statute was the main focus of the dissent in Woodall. Woodall, 432 F.3d at 251-52 (Fuentes, J. dissenting) ("[T]he § 3621(b) factors need not be considered by the BOP until an inmate is actually considered for a transfer, and . . . the BOP is not required to consider any inmate for transfer to a CCC until the lesser of six months or ten percent of an inmate's sentence remains."). The BOP asserts that there is no temporal requirement in § 3621(b) and that § 3624(c) requires the consideration of a transfer to a CCC only in the last ten percent of an inmate's sentence.

We disagree with this interpretation. A BOP decision to not transfer an inmate–or, as in this case, a group of inmates–requires the same consideration of the § 3621(b) factors as does the decision to transfer an inmate to a CCC. It is impossible for the BOP to consider all five factors on a categorical basis. As such,

the BOP's regulation necessarily conflicts with § 3621(b) by excluding an entire class of inmates–those not serving the final ten percent of their sentences–from the opportunity to be transferred to a CCC.

The district court stated that while "the BOP labeled the [February 2005 regulation] a 'categorical exercise of discretion' it did not exercise its discretion at all." We agree that the BOP's regulation removed the opportunity for the BOP to exercise discretion for all inmates not serving the last ten percent of their sentences. Section 3621(b) requires that discretion be exercised on an individual basis. Thus, the BOP's regulation conflicts with § 3621(b) and is invalid.

V.

Because we agree with the district court that the BOP's regulation is in violation of § 3621(b), we need not address Fults's Ex Post Facto Clause arguments.

VI.

For the foregoing reasons, we affirm the judgment of the district court.

RILEY, Circuit Judge, dissenting.

I respectfully dissent. Almost two years ago, this same panel entertained a challenge to the temporal limitations of 18 U.S.C. § 3624(c). See Elwood v. Jeter,

386 F.3d 842 (8th Cir. 2004). The majority in <u>Elwood</u> interpreted 18 U.S.C. §§ 3621(b) and 3624(c), and held the Bureau of Prisons (BOP) has discretion to transfer a prisoner to a community confinement center (CCC) at any time during a prisoner's incarceration, notwithstanding section 3624(c)'s express six-month limitation for such confinements. <u>Id.</u> at 847. In my dissenting opinion, I concluded the specific limitation of authority to transfer prisoners to CCCs was mandated by Congress in section 3624(c), and the express six-month limitation did not conflict with the general authority Congress gave in section 3621(b). <u>Id.</u> at 848-49 (Riley, J., dissenting). This construction of the two statutes harmonized the law, did not render any terms in either statute meaningless, comported with the canon of statutory construction "the specific governs the general," and carried out Congress's intent. <u>Id.</u> at 847-48 (Riley, J., dissenting).

On February 14, 2005, in response to <u>Elwood</u> and similarly decided cases, the BOP implemented regulations identifying a category of inmates who are ineligible for transfer to CCCs under section 3621(b): those inmates whose remaining sentence exceeds the lesser of six months or 10% of their original sentence. 28 C.F.R. § 570.20, .21. These regulations use the BOP's discretionary authority under section 3621(b) to bring the BOP's procedures into compliance with section 3624(c). The majority, however, believes the BOP's regulations conflict with section 3621(b).

I am convinced the BOP's categorical rules governing transfer of inmates to CCCs, and implementing section 3624(c), do not conflict with the factors enumerated in section 3621(b). My conviction coincides with Judge Fuentes's dissenting opinion in <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 251-52 (3rd Cir. 2005). Judge Fuentes concluded that until the lesser of six months or 10% of an inmate's sentence remains, the BOP may categorically preclude the consideration of any inmate for CCC transfer. <u>Id.</u> (Fuentes, J., dissenting and citing three similar opinions upholding the regulations).

Section 3621(b)'s requirement that the BOP make individualized assessments when transferring inmates to CCCs applies only when the BOP elects to consider whether to make a transfer. The BOP is not required to consider transferring any inmate under its custody before the point in an inmate's sentence identified by statute. In Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court held the BOP is authorized to create categorical rules, because "[e]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Id. at 243-44 (internal quotation omitted). The statute is clear, see section 3624(c), and the applicable Supreme Court holding is unmistakable, see Lopez, 531 U.S. at 243-44. The BOP's regulations properly follow and implement the law.

Accordingly, I dissent.

_____