**Paul PUTNAM, Petitioner,**

v.

**David L. WINN, Warden, Federal Medical Center, Devens, Respondent.**

**Civil Action No. 06–40068–PBS.**

United States District Court, D. Massachusetts.

July 7, 2006.

Paul Putnam, Ayer, MA, pro se.

Mark J. Grady, United States Attorney's Office, Boston, MA, for Respondent.

### MEMORANDUM AND ORDER

SARIS, District Judge.

Petitioner Paul Putnam, convicted of drug trafficking, brings this habeas petition pursuant to 28 U.S.C. § 2241. Putnam, sentenced on November 1, 2004 to twenty-one months incarceration followed by three years of supervised release, began serving his sentence on April 5, 2005, and is presently detained in the Federal Medical Center at Camp Devens ("FMC Devens") in Ayer, Massachusetts. His projected statutory release date is October 12, 2006, and he will likely be assigned to a Community Corrections Center ("CCC"), which is commonly known as a halfway house, on or about August 22, 2006. Petitioner challenges the new Bureau of Prison ("BOP") rule, finalized on January 10, 2005, which categorically precludes his assignment to the CCC except for the lesser of ten percent of the sentence being served or six months. The government moves to dismiss. This new rule has spawned litiga-tion across the country. After hearing, the petition is *ALLOWED,* and the government's motion to dismiss is *DENIED.*.

### A. Jurisdiction Thicket

The gateway issue of jurisdiction is a tangled thicket. The petitioner contends he has the right to challenge his placement under the new BOP rule with a habeas petition pursuant to 28 U.S.C. § 2241. Recently addressing this issue, the Third Circuit permitted a prisoner to proceed with a similar habeas petition because federal prisoners may challenge the "execution" of the sentence under § 2241. *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 241–44 (3rd Cir.2005). The Seventh Circuit took the opposite route, concluding that habeas was unavailable because the challenge to the rule implicated the conditions of confinement and not the fact or length of confinement. *See Richmond v. Scibana,* 387 F.3d 602, 605 (7th Cir.2004). Acknowledging there is no bright line, the Seventh Circuit held instead that the challenge to the BOP's interpretation of § 3624(c) should be brought under the Administrative Procedure Act ("APA"). *Id.* at 606.

▮ The First Circuit has not addressed the matter but has permitted habeas petitions in certain narrow circumstances where there was a change in the place of confinement. *See, e.g., Brennan v. Cunningham,* 813 F.2d 1, 4–5 (1st Cir. 1987) (permitting habeas challenge to revocation of participation in halfway house program where connected to ultimate parole). In the immigration context, habeas encompasses colorable claims that a prisoner's federal statutory rights have been violated. *See Saint Fort v. Ashcroft,* 329 F.3d 191, 203 (1st Cir.2003) ("[I]f a statute makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to

even consider him. But he may not challenge the agency's decision to exercise or not exercise its discretion.").

█ If the Court has habeas jurisdiction, a common law exhaustion rule applies, which can be waived if exhaustion would be futile. *Richmond*, 387 F.3d at 604. The petitioner has not demonstrated he properly exhausted his administrative remedies, but all parties agree that exhaustion would be futile here and therefore waivable.

█ The matter is made even more tangled because the government contends that the proper vehicle for challenging the rule is the APA. Under an APA claim brought via 28 U.S.C. § 1331, a petitioner must exhaust under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court recently held that there is no futility exception under § 1997e(a). *Woodford v. Ngo*, —— U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368, 2006 WL 1698937, at *2 (2006) (holding that under PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"). The "APA falls within the broad sweep of claims subject to the exhaustion requirements of the PLRA." *Krilich v. Federal BOP*, 346 F.3d 157, 159 (6th Cir.2003) (involving APA challenge to BOP's electronic drug detection program that tested prison visitors).

However, the petitioner may also challenge the BOP rule under the APA by bringing a 28 U.S.C. § 1441 habeas petition. 5 U.S.C. § 703 (permitting judicial review under the APA in "applicable form of legal action" including habeas corpus). In the specific context of challenges to the BOP rules, many courts have exercised habeas jurisdiction over APA actions, albeit often without discussion. *See, e.g., Paulsen v. Daniels*, 413 F.3d 999, 1004–05 (9th Cir.2005) (exercising habeas jurisdiction over APA challenge regarding early release program); *Iacaboni v. United States*, 251 F.Supp.2d 1015, 1017–1018 (D.Mass.2003) (exercising jurisdiction under § 2255 to challenge regulations under the APA and Ex Post Facto Clause); *Monahan v. Winn*, 276 F.Supp.2d 196, 204–05, 212–21 (D.Mass.2003) (exercising habeas jurisdiction in challenge to "execution" of the sentence under APA and Ex Post Facto and Due Process Clauses).[1]

█ "[T]he PLRA does not apply to any requests for collateral relief under 28 U.S.C. §§ 2241, 2254, or 2255." *Walker v. O'Brien*, 216 F.3d 626, 628–29, 633–37 (7th Cir.2000) (bringing "this circuit into line with all of our sister circuits who have ruled on the matter"). Therefore, the Court may waive the exhaustion requirement if an APA challenge is rooted in habeas.

The government contends that permitting a § 2241 challenge to a BOP placement will open a floodgate of litigation by prisoners contesting their placement by arguing they are challenging the "execution" of their sentence. However, this spectre is not persuasive because there is

---

1. Other courts have asserted jurisdiction over APA challenges to the BOP rules without discussing whether the basis for subject matter jurisdiction was 28 U.S.C. § 1331 or § 2241. *See, e.g., Goldings v. Winn*, 383 F.3d 17, 20–21 (1st Cir.2004) (seeking declaratory relief and injunction under APA and Ex Post Facto and Due Process Clauses); *Castellini v. Lappin*, 365 F.Supp.2d 197, 202–05 (D.Mass.2005) (allowing preliminary injunction barring termination of "boot camp" program under APA and Ex Post Facto Clause).

no habeas review of discretionary routine placement decisions under the APA. 18 U.S.C. § 3625.

■ While the path through this thicket is far from clear, I conclude that the petitioner has habeas jurisdiction under § 2241 to challenge the "execution" of his sentence because the BOP rule upon which it was predicated is contrary to federal law under the APA. As such, exhaustion is not required for this § 2241 habeas petition, because it would be futile. Now, I proceed to the merits, which luckily involve a straightforward analysis.

## B. *Statutory and Regulatory Framework*

In 18 U.S.C. § 3621(b), Congress gave the BOP the authority to designate an inmate's place of imprisonment. The statute provides in pertinent part:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau *may* designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence—
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and

> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b) (emphasis added). Section 3624(c) supplemented this authority by directing the BOP to place federal inmates under conditions affording an opportunity and preparation for re-entry into the community shortly before the conclusion of their sentences. Section 3624(c) states:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Prior to December 20, 2002, the Bureau's interpretation of the statutory authority was set forth in BOP Program Statement 7310.04. Section 5 of that document stated that a CCC met the definition of a penal or correctional facility under 18 U.S.C. § 3621(b) and indicated that the BOP was not restricted in designating an inmate to a CCC by § 3624(c)'s time limits.

In response to guidance from the Department of Justice, Office of Legal Counsel, the BOP changed its policy and required instead that pre-release CCC

designations be limited in duration to "the last ten percent of the prison sentence being served, not to exceed six months." 69 Fed.Reg. 51213 (Aug. 18, 2004). In *Goldings*, 383 F.3d at 28, the First Circuit found this new statutory interpretation to be erroneous:

> Under § 3621(b), the BOP has discretionary authority to designate any available penal or correctional facility that meets minimum standards of health and habitability as the place of a prisoner's imprisonment, and to transfer a prisoner at any time to such a facility. A community correction center is a correctional facility and therefore may serve as a prisoner's place of imprisonment. "When as now, the plain language of a statute unambiguously reveals its meaning, and the revealed meaning is not eccentric, courts need not consult other aids to statutory construction." Because the intent of Congress is clear in its grant of discretionary authority to the BOP to transfer a prisoner to any available penal or correctional facility, we must give effect to that intent. The defendants' interpretation of § 3621(b) is contrary to the plain meaning of the statute; it is not entitled to judicial deference.

*Id.* at 28 (citations and footnote omitted). In a concurring opinion, Judge Howard cautioned:

> But just because the BOP may assign prisoners to CCCs does not mean that it must do so. As our holding states, BOP is authorized to transfer prisoners to CCCs at any time during their prison terms. Consistent with the question presented by this appeal, the lead opinion does not address whether § 3621(b) places any constraints on the manner in which BOP may choose to exercise its discretion to make CCC placements.

*Id.* at 33 (citation omitted). Relying on *Lopez v. Davis*, 531 U.S. 230, 243–244, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), Judge Howard added: "Even if the statutory criteria for making assignments and transfers could be read to guarantee some sort of individualized treatment, it is apparent to me that BOP would still have the authority to make a categorical rule excluding some or all CCC placements, except as required for end of sentence placements governed by § 3624(c)." *Id.* (footnote omitted).

### C. *The Categorical Imperative*

On August 18, 2004, the BOP proposed a new rule governing the designation of inmates to CCCs. 69 Fed.Reg. 51213 (Aug. 18, 2004). The rule was finalized on January 10, 2005 and became effective on February 14, 2005. 70 Fed.Reg. 1659 (Jan. 10, 2005). The rule was codified in 28 C.F.R. §§ 570.20, 570.21.

### § 570.20 What is the purpose of this subpart?

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

### § 570.21 When will the Bureau designate inmates to community confinement?

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the

prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program) (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

Citing *Lopez*, the BOP expressly concluded that its categorical exercise of discretion was permissible under Supreme Court precedent upholding rules of general applicability even where a statutory scheme requires individualized determinations. 70 Fed.Reg. 1660–61 (Jan. 10, 2005).

■ While the district courts are split on the issue, both the Third and Eighth Circuits have concluded that the 2005 regulations are inconsistent with *Lopez* and the requirements of 18 U.S.C. § 3621(b).[2] *See Fults v. Sanders,* 442 F.3d 1088 (8th Cir.2006); *Woodall,* 432 F.3d at 235. The Third Circuit held in *Woodall:*

> We agree with the reasoning of those courts that have found the regulations unlawful. The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

*Woodall,* 432 F.3d at 244. "In sum, we believe the statute indicates that the BOP

*may* place a prisoner where it wishes, *so long as* it considers the factors enumerated in § 3621." *Id.* at 245; *see also Fults,* 442 F.3d at 1091–1092 (adopting Woodall). The Third Circuit distinguished *Lopez* because it involved a categorical rule which reflected congressional concern "about allowing possibly violent inmates to become eligible for prerelease." *Woodall,* 432 F.3d at 246. In addition, the BOP regulation at issue in *Lopez* had filled a "statutory gap in a way that [wa]s reasonable in light of the legislature's revealed design" where "Congress ha[d] not identified any further circumstance in which the [BOP] either must grant the reduction, or is forbidden to do so." 531 U.S. at 242, 121 S.Ct. 714.

By contrast, in this case, the 2005 BOP rule has "rejected" the congressional mandate for individualized consideration. *Woodall,* 432 F.3d at 250 (finding that "congressional intent here is clear: determinations regarding the placement scheme—including where a prisoner is held, and when transfer is appropriate—must take into consideration individualized circumstances"). *Lopez* clarifies that the BOP may rely on rule-making to resolve issues of general applicability with respect to categories of prisoners who might have individual characteristics which render them ineligible for CCC placement (e.g., violent offenders that pose a risk to the public). However, the new BOP policy that precludes any individualized consideration of a prisoner's eligibility for the CCC based on factors mandated by Congress is too blunt an instrument, and it contravenes the statutory scheme.

Without golding the lily further, I agree with the decisions in *Woodall* and *Fults* and *ALLOW* the petition.

---

**2.** I am told cases are pending in the Second and Seventh Circuits as well.

### ORDER

I **ALLOW** the habeas petition (Docket No. 1) and **ORDER** that, within ten calendar days of this order, the BOP reconsider Putnam's CCC placement in good faith in accordance with the standards employed at FMC Devens prior to December 2002 and without consideration of 28 C.F.R. §§ 570.20, 570.21. An affidavit shall be filed with the Court demonstrating compliance. The government's motion to dismiss is **DENIED.** (Docket No. 14.)