# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1651

_____

Gary H. Miller,

        Appellant,

    v.

J.D. Whitehead, Warden,

        Appellee.

_____

No. 07-1652

_____

Fernando Antonio Lovato,

        Appellant,

    v.

J.D. Whitehead, Warden,

        Appellee.

_____

No. 07-1653

_____

Appeals from the United States
District Court for the
District of South Dakota.

Kenneth Howard,                        *
                                       *
        Appellant,                     *
                                       *
    v.                                 *
                                       *
J.D. Whitehead, Warden,                *
                                       *
        Appellee.                      *
                                       *
    _____                        *
                                       *
    No. 07-1654                         *
    _____                        *
                                       *
David A. Lauer, Sr.,                   *
                                       *
        Appellant,                     *
                                       *
    v.                                 *
                                       *
J.D. Whitehead, Warden,                *
                                       *
        Appellee.                      *

                          _____

                Submitted:  December 11, 2007
                    Filed:  May 30, 2008
                          _____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.
                          _____

COLLOTON, Circuit Judge.

    Several inmates at the Federal Prison Camp at Yankton, South Dakota,
petitioned for writs of habeas corpus under 28 U.S.C. § 2241, alleging that the Bureau

of Prisons unlawfully declared them ineligible for placement at a Residential Re-entry Center.  The district court[1] denied the petitions.  We affirm with respect to two of the appellants, and dismiss the other two appeals as moot.

I.

The Bureau of Prisons ("BOP") is authorized by statute "to designate the place of [a] prisoner's imprisonment."  18 U.S.C. § 3621(b).  Two statutes include further guidance regarding this authority.  Section 3621(b) provides that the BOP "may at any time," having regard for five matters enumerated in the statute, "direct the transfer of a prisoner from one penal or correctional facility to another."  *Id.*[2]  Another statute in effect at the time these inmates sought transfer to an RRC directed that "[t]he Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."  18 U.S.C. § 3624(c) (2000) (amended 2008).

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

[2]The statute directs the BOP to consider –
(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--
(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In December 1998, pursuant to the authority described in these statutes, the BOP issued Program Statement ("PS") 7310.04. This program statement established a policy concerning when the BOP will place an inmate in a Residential Re-Entry Center ("RRC"), formerly known as a "Community Confinement Center." The statement opined that an RRC is a "penal or correctional facility" within the meaning of § 3621(b), and implicitly assumed that an RRC also is a "place of imprisonment." The statement reasoned that § 3624(c) did not restrict the use of RRCs to the last ten percent of the inmate's term, because § 3621(b) allows the BOP generally to "designate any available penal or correctional facility." It proceeded to explain that a decision on RRC placement "normally" should be made "no later than 11 to 13 months before an inmate's projected release date." The statement also includes guidelines for an RRC referral, including that "[a]n inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification."

In 2002, the BOP abandoned this program statement, and determined that an inmate was eligible for placement in an RRC only during the last ten percent of the inmate's term of imprisonment. *See* 28 C.F.R. § 570.21. In *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004), the BOP defended its new policy on the ground that § 3624(c) limits the BOP's transfer authority under § 3621(b) to the last ten percent of the prisoner's term.[3] *Elwood* rejected this argument, holding that § 3624(c) *requires* the BOP, when practicable, to transfer a prisoner to an RRC for a reasonable part of the last ten percent of his sentence, not to exceed six months, but that § 3624(c) does not

---

[3]The new policy was adopted after the Department of Justice concluded that an RRC is not a "place of imprisonment" for purposes of § 3621(b). *See* Office of Legal Counsel, U.S. Department of Justice, *Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment*, 2002 WL 31940146, at *5 & n.6 (Dec. 13, 2002). The BOP conceded in *Elwood*, however, that an RRC is a place of imprisonment, and we assumed the point for purposes of analysis. 386 F.3d at 846.

-4-

*forbid* the BOP from designating a prisoner to an RRC for more than ten percent of his sentence pursuant to its authority under § 3621(b). *Id*. at 846-47.

In response to our decision in *Elwood*, and a similar decision from the First Circuit, *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004), the BOP adopted new regulations in February 2005. Under these regulations, the BOP again strictly limited transfers to RRCs to the last ten percent of a prisoner's term, but did so as a categorical exercise of its discretion under § 3621(b). 28 C.F.R. §§ 570.20-21. This regulation was challenged in *Fults v. Sanders*, 442 F. 3d 1088, 1089 (8th Cir. 2006), and a divided panel held that the regulation was "contrary to the statute's unambiguous language," *id*. at 1090, because § "3621(b) requires that discretion be exercised on an individual basis." *Id*. at 1092.

In response to *Fults*, the BOP instructed officials at the Yankton facility to act in accordance with PS 7310.04, thus bringing its RRC placement policy full circle. As before, PS 7310.04 provided that the BOP "normally" would make a decision on RRC placement 11 to 13 months before a prisoner's projected release date, and that RRC placements for longer than 180 days are possible only with "extraordinary justification."

In this case, four inmates with more than six months remaining on their sentences sought transfer to an RRC in 2006 or 2007. Inmate Gary Miller requested transfer to an RRC for the last 73 months of his ten-year sentence. Fernando Lovato requested transfer for the final 16 to 18 months of his ten-year sentence. Kenneth Howard initially requested transfer for the last 8 to 10 months of his nine-year sentence, and later, with 20 months remaining in his sentence, Howard requested immediate placement in an RRC. David Lauer, Sr., requested transfer for the final 30 months of his 70-month sentence. The BOP rejected the various requests. The warden advised Miller, Lovato, and Lauer that each had not established an "extraordinary justification" for serving more than 180 days in an RRC. Howard submitted as evidence two memoranda, labeled "informal resolution," in which a unit

manager and correctional counselor advised Howard that he would be considered for RRC placement when there were 11-13 months remaining in his sentence.

The inmates petitioned for writs of habeas corpus, asserting that § 3621(b), as interpreted in *Elwood* and *Fults*, prohibited the BOP from using the time frames specified in the program statement, or from requiring an "extraordinary justification" for lengthy placements in an RRC. The district court denied the petitions. The court reasoned that the BOP was authorized to impose a requirement of "extraordinary justification" for early placement at an RRC, and that there was no showing that the BOP had failed to consider the factors in § 3621(b) in making individualized determinations concerning who is placed in an RRC. In sum, the court ruled that the BOP had "not acted contrary to law in considering inmates for release to a halfway house 11 to 13 months prior to projected release and in restricting halfway house placements beyond 180 days to those cases demonstrating extraordinary justification."

Since this appeal was submitted, we have been notified of several pertinent developments. First, the BOP transferred Lovato and Howard to RRCs in January and April 2008, respectively. Second, in April 2008, Congress enacted the Second Chance Act of 2007, which amended § 3624(c). Pub. L. No. 110-199, 122 Stat. 657 (2008). The new statute provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act § 251, 122 Stat. at 692. In reaction to this statute, and the new 12-month maximum placement, the BOP issued guidance directing that "inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates." We are advised that Lauer's request for placement in an RRC has been re-assessed in light of this guidance, and that the BOP has determined that a placement of 180 days in an RRC is "appropriate to aid in his transition needs." Miller's case has not been reevaluated.

In view of these developments, we conclude that the claims of Lovato and Howard are moot, because the relief they seek has been granted. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam). Lauer and Miller have not been placed in an RRC, so their objections to the warden's decisions denying immediate placement continue to present a live controversy.

## II.

The inmates contend that PS 7310.04, as applied to them in 2006, conflicts with § 3621(b), as interpreted in *Fults*, because it "automatically excludes all inmates not serving the last 11-13 months of their prison sentence[s]." *Fults* held that the 2005 regulation conflicted with § 3621(b) by "excluding an entire class of inmates – those not serving the final ten percent of their sentences – from the opportunity to be transferred to a CCC." 442 F.3d at 1092. The inmates here argue that like the regulation in *Fults*, the program statement categorically excluded a class of inmates from the opportunity to be transferred.

We reject this contention because PS 7310.04, as applied to Miller and Lauer, did not automatically preclude giving consideration to an RRC placement earlier than the last 11 to 13 months of an inmate's sentence. In the cases of Miller and Lauer, the warden *did* consider the possibility of transfer at an earlier date, but denied the requests based on the absence of an "extraordinary justification" to grant a placement of greater than 180 days. The program statement, moreover, provided only that "[a] final and specific release preparation plan, including a decision as to [RRC] referral, is *normally* established at a team meeting *no later* than 11 to 13 months before an inmate's projected release date." (emphasis added). The plain language of the program statement allowed a decision regarding RRC referral earlier than 11 to 13 months before release; the policy said only that the decision usually is made "no later" than that time. The qualifying term "normally" also implied that even if 11 to 13 months before release were the usual time frame for a decision on transfer, the BOP had authority to render a decision at an earlier time in abnormal situations. By its

-7-

terms, therefore, the program statement did not effect the type of absolute categorical exclusion of a class of inmates that underlay the decision in *Fults*.

*Fults*, moreover, did not purport to hold that an inmate is entitled to a full-blown analysis of a request to transfer, involving individualized consideration of all five factors in § 3621(b), whenever the inmate chooses to make such a request. Taken to its logical conclusion, the argument advanced by the inmates would require the BOP to consider daily requests for transfer to an RRC from every inmate in a facility, and to deny such requests only after an individualized consideration of each inmate's request and the five statutory factors. We agree with the First Circuit that "Congress surely did not intend such a result." *See Muniz v. Sabol*, 517 F.3d 29, 36 n.14 (1st Cir. 2008). "Even if a statutory scheme requires individualized determinations, . . . the decisionmaker has authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Lopez v. Davis*, 531 U.S. 230, 243-44 (2001) (internal quotation omitted). It was not unreasonable for the BOP to conclude categorically that a decision on transfer to an RRC "normally" should be made "no later" than 11 to 13 months before a projected release date, because that was the time when most inmates would be serious candidates for such a transfer.

The inmates also challenge the BOP guideline that placement in an RRC for more than 180 days is "highly unusual" and possible only with an "extraordinary justification."[4] We disagree with the inmates' contention that the "extraordinary

---

[4]The new BOP guidance issued in light of the Second Chance Act includes an "adjustment" to PS 7310.04, which states that "RRC needs can usually be accommodated by a placement of six months or less," and that placement in an RRC for more than six months must be approved in writing by a regional director of the BOP. Subject to further elaboration by the BOP or a specific decision by a warden applying this guidance, we do not understand this adjustment to supersede the provision of PS 7310.04 stating that "placement beyond 180 days [is] highly unusual, and only possible with extraordinary justification."

justification" requirement is a non-statutory "factor" that the BOP is prohibited from adding to the analysis under § 3621(b). The "extraordinary justification" requirement is not a factor at all. It is a standard for deciding whether to grant a request for extended placement in an RRC.

The "extraordinary justification" requirement does give weight to the time remaining on the inmate's sentence as a factor in the placement analysis, but we do not think this is inconsistent with § 3621(b). Time remaining on a sentence may bear on some of the statutory factors. An inmate serving a lengthy sentence will have a greater impact on the resources of the facility contemplated, *see* § 3621(b)(1), and placement of such an inmate in an RRC may be in tension with the purposes for which a sentence of imprisonment was determined to be warranted. *See* § 3621(b)(4)(A). And even if time remaining could not be tied directly to a statutory factor in a particular case, we do not read § 3621(b) to preclude the consideration of factors beyond those set forth in the statute. *See Levine v. Apker*, 455 F.3d 71, 86 (2d Cir. 2006).

Nor do we think the manner in which time remaining on a sentence was considered in the cases of Miller and Lauer conflicts with the statute or our precedents. Unlike the situation in *Fults*, the requirement that an inmate make a stronger showing under the statutory factors to justify an extended RRC placement does not categorically remove the opportunity for the BOP to exercise its discretion with respect to an entire class of inmates. Rather, the program statement reflects a determination that *ordinarily* a placement of more than 180 days is not appropriate under § 3621(b). But a particular inmate still has an opportunity to show that in the individual circumstances of his case, a longer placement would be justified.

The inmates also complain that the "extraordinary justification" guideline suggests that the BOP requires an inmate to supply information about events occurring after the inmate was first incarcerated, while all of the factors listed in the statute refer to matters occurring prior to incarceration. The implication of the argument is that

consideration of post-incarceration circumstances is inconsistent with the statute. The premise of this contention is flawed, because the statutory matters are not limited to pre-incarceration circumstances. The "characteristics of the prisoner," § 3621(b)(2), may well include the inmate's behavior in prison. The "resources of the facility contemplated," § 3621(b)(1), may depend on the capacity of a particular facility to accept additional inmates into its program at the time of the request.

Apart from the policy statement, Miller and Lauer also appear to challenge the manner in which the warden disposed of their particular requests for immediate transfer to an RRC. The inmates have not established, however, that the warden failed to consider the relevant statutory factors in denying their requests. Although the warden's responses were brief, the statute does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC. In *Fults*, we affirmed a district court order that simply required the BOP to consider such a request "in good faith." *Fults*, 442 F.3d at 1089. We see no evidence that the warden acted other than in good faith when he concluded that immediate RRC placement was not appropriate.

For the foregoing reasons, the judgment of the district court is affirmed with respect to inmates Miller and Lauer, and the appeals of inmates Lovato and Howard are dismissed as moot. The government's unopposed motion to supplement the record is granted.

———————————————