**Elliott LEVINE, Petitioner–Appellant,**

**v.**

**Craig APKER * Respondent–Appellee.**

**Docket No. 05-2590 PR.**

United States Court of Appeals,
Second Circuit.

Argued: Aug. 4, 2005.

Decided: July 10, 2006.

---

* Pursuant to Fed. R.App. P. 43(c)(2), Craig Apker, the warden at Federal Correction Institution Otisville, has been substituted for Fredrick Menifee as respondent.

Wylie M. Stecklow (Mark S. Silverman, on the brief), New York, N.Y., for Petitioner–Appellant.

Richard E. Rosberger, Assistant United States Attorney for the Southern District of New York, for David N. Kelley, United States Attorney for the Southern District of New York (Neil M. Corwin, Assistant United States Attorney, on the brief), New York, N.Y., for Respondent–Appellee.

Peter Goldberger, Ardmore, Penn. (Todd A. Bussert, New Haven, Conn.; Richard D. Willstatter, Green & Willstatter, White Plains, N.Y.; Mary Price, Families Against Mandatory Minimums Foundation, Washington, D.C.; and Michael L. Waldman, Fried, Frank, Harris, Shriver &

Jacobson LLP, Washington, D.C.) for amici curiae Families Against Mandatory Minimums Foundation, National Association of Criminal Defense Lawyers, and New York State Association of Criminal Defense Lawyers, in support of Petitioner–Appellant.

Before: CALABRESI and RAGGI, Circuit Judges, and MURTHA, District Judge.**

Judge RAGGI dissents in a separate opinion.

CALABRESI, Circuit Judge.

Elliott Levine, a federal prisoner at all times relevant to this action, appeals the denial of two petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Like many federal actions across the country, his applications challenge two agency actions by the Bureau of Prisons ("BOP") that limit the placement of federal prisoners in community corrections centers ("CCCs"), commonly known as halfway houses. The first agency action, a policy implemented by the BOP in December 2002 ("December 2002 Policy"), construed two provisions of the Sentencing Act, 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c), as curtailing the BOP's authority to transfer inmates to CCCs (a) for a time no greater than the final ten percent of their sentences, and (b) for a period not exceeding six months. There followed a series of decisions in federal courts across the country, the majority of which rejected the BOP's limiting interpretation. In response, in February 2005, the BOP enacted, pursuant to formal rulemaking procedures, a categorical rule ("February 2005 Rule") that placed the same durational limits on CCC confinement. Prior to these

changes, the BOP had followed a practice of, on occasion, placing some federal prisoners in CCCs for more than the last ten percent of their sentence or for more than six months, or both.

Levine challenges both BOP actions under this court's 28 U.S.C. § 2241 authority, thereby potentially presenting as many as five issues to this court: (1) whether Levine's challenges to the BOP policy and regulation are now moot; (2) whether Levine's challenges to the BOP actions are cognizable under 28 U.S.C. § 2241; (3) whether his challenges to the December 2002 Policy are justiciable in this case; (4) whether the February 2005 Rule is contrary to the BOP's governing statutes; and (5) whether the February 2005 Rule violated the *ex post facto* doctrine. Levine also challenges the February 2005 Rule as arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).

## BACKGROUND

### I. Facts & Procedural History

Levine was convicted in the Southern District of New York of bank fraud in violation of 18 U.S.C. § 1344. He was sentenced on September 8, 2004 to serve fifteen months imprisonment followed by three years of supervised release. He was sent to the Federal Correctional Institution, Otisville, New York to serve his sentence.

Levine brought two petitions for a writ of habeas corpus pursuant to 28 U.S.C § 2241. In the first, filed *pro se* before District Judge Cote on December 9, 2004, Levine challenged the BOP's December 2002 Policy and requested consideration for CCC placement six months prior to the

** The Honorable J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

end of his sentence of imprisonment, as could have occurred pursuant to the BOP policy in place before December 2002. In a brief order, the district court denied his petition on the grounds that the December 2002 Policy was no longer in effect and would not govern the BOP's determination regarding Levine's CCC placement. Levine, again proceeding *pro se*, filed a second habeas petition before District Judge Brieant on April 4, 2005. This petition challenged the February 2005 Rule. Judge Brieant denied the petition on the merits, finding that the rule was a proper exercise of the BOP's categorical rulemaking authority and did not violate the *ex post facto* doctrine. Levine appeals both denials.

## II. The Statutory and Regulatory Framework Governing CCC Placement

Two statutes are the basis of the BOP's authority with respect to placement and transfers of federal prisoners.

The first is 18 U.S.C. § 3621(b). This statute governs the BOP's authority to designate a prisoner's place of imprisonment. It provides:

> Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> > (1) the resources of the facility contemplated;
> >
> > (2) the nature and circumstances of the offense;

> > (3) the history and characteristics of the prisoner;
> >
> > (4) any statement by the court that imposed the sentence—
> >
> > > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > >
> > > (B) recommending a type of penal or correctional facility as appropriate; and
> >
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. . . .

18 U.S.C. § 3621(b).

The second relevant statute is 18 U.S.C. § 3624(c), which instructs the BOP to prepare prisoners for re-entry into the community. The applicable provision states:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. . . .

18 U.S.C. § 3624(c).

Several circuit courts have chronicled the history of CCC placement policy leading up to the February 2005 Rule. *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir.2005); *Goldings v.*

*Winn,* 383 F.3d 17, 19–21 (1st Cir.2004); *Elwood v. Jeter,* 386 F.3d 842, 844–45 (8th Cir.2004). Rather than repeat the entire history here, we note only the relevant highlights.

Prior to the policy change in December 2002, the BOP interpreted its governing legislation such that the agency's general authority to designate places of imprisonment was "not restricted by § 3624(c) in designating a CCC for an inmate and [that it could] place an inmate in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate." *See* U.S. Dep't of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998). But on December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC"), advised the BOP that this practice exceeded the agency's authority under 18 U.S.C. §§ 3621(b) and 3624(c).

The OLC reasoned that confinement in a community corrections center did not constitute "imprisonment" within the meaning of § 3621(b). It found that that the BOP therefore lacked statutory authority to allow an offender to serve a term of imprisonment, as defined by the federal court's sentencing order, in community confinement for any period longer than the transitional pre-release custody defined in § 3624(c). The United States Attorney General's Office adopted this position on December 16, 2002. To comply with the Attorney General's position, the BOP issued the December 20, 2002 policy, which, as previously described, mandated that "[p]re-release programming CCC designations are limited in duration to the last

10% of the prison sentence, not to exceed six months."

A cavalcade of habeas petitions challenging the December 2002 Policy followed. The First and Eighth Circuits, as well as many district courts,[1] found the policy contrary to the plain meaning of § 3621(b), which they read—as had the BOP previously—to give the BOP discretionary authority to place federal inmates in CCCs at any time during their prison term. *See Goldings,* 383 F.3d at 26; *Elwood,* 386 F.3d at 847. These courts found that § 3624(c) imposed an *affirmative, discretionless obligation* on the BOP, where practicable, to send an offender to a less-restrictive facility during a transitional period prior to final release. *See Goldings,* 383 F.3d at 23; *Elwood,* 386 F.3d at 846–47. The courts further held that the section did not preclude the BOP from doing the same at earlier stages. *Goldings,* 383 F.3d at 24; *Elwood,* 386 F.3d at 846–47. In other words, the combined import of the statutes was to give the BOP discretion to transfer an inmate to a CCC for a period longer than six months or ten percent of his sentence, but to oblige the BOP, where practicable, to transfer inmates to a CCC for a reasonable part of the last ten percent, not to exceed six months, of his sentence. *See Goldings,* 383 F.3d at 28–29; *Elwood,* 386 F.3d at 846–47.

On August 18, 2004, the BOP, after applying its formal notice-and-comment procedures, promulgated a new rule. This rule had the effect of imposing the same durational limitations on prisoner's CCC

---

1. Our court did not consider the December 2002 Policy before its repeal. We have, however, acknowledged the "firestorm" of legal challenges triggered by the policy and we reported one district court's observation that a sizeable majority of district courts in our circuit had found the policy invalid. *See*

*United States v. Arthur,* 367 F.3d 119, 121 (2d Cir.2004) (declining to consider the merits of a petitioner's challenge to the December 2002 Policy, because the petitioner had not yet surrendered to the BOP, which meant that the agency was not properly before the court).

**76**

confinements as the BOP had implemented in its December 2002 Policy. It did so now, however, pursuant to the BOP's broad discretion to place inmates in community confinement, rather than in rejection of that authority, as had been recommended in 2002 by the OLC. The BOP explicitly defined the purpose of the new rule as follows:

> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

28 C.F.R. § 570.20.

The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the Bureau designate inmates to community confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential

substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21.

We are the third court of appeals to decide a habeas petition challenging the February 2005 Rule. Both other circuits have struck down the Rule. *See Fults v. Sanders,* 442 F.3d 1088, 1092 (8th Cir. 2006); *Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235, 248–49 (3d Cir.2005). A number of district courts across the country have heard challenges to the regulation, with a variety of results. *See Woodall,* 432 F.3d at 244, n. 9–10 (collecting cases).

## DISCUSSION

### I. Levine's Habeas Challenges

Levine's habeas petitions challenge the December 2002 Policy as well as the February 2005 Rule, and he presses both issues on appeal. We review his petitions *de novo. Sash v. Zenk,* 428 F.3d 132, 134 (2d Cir.2005).

### A. Mootness

Levine was released on or about November 29, 2005, and he is now serving a three-year term of supervised release. The Supreme Court has cautioned that "[t]o abandon the case at an advanced stage may prove more wasteful than frugal," *Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.,* 528 U.S. 167, 191–92, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), but of course it has said that "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed," *Church of Scientology of California v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (internal quotation marks omitted). Though neither party has raised the issue, this case raises

the obvious question of what relief we or the district court could grant in this case if Levine were to prevail on his habeas claims.

Our circuit faced a similar question in *Sash v. Zenk*, 428 F.3d 132, 133 (2d Cir. 2005), in which a habeas petitioner had been released from prison before appellate adjudication of his challenge to a BOP regulation. The court held that under 28 U.S.C. § 2243, this court may provide habeas relief "as law and justice require," which could include a reduction in the petitioner's term of supervised release. *See Sash*, 428 F.3d at 133; *see also DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir.1996) (stating that "[a] federal court has broad discretion in conditioning a judgment granting habeas relief"); 18 U.S.C. § 3583(e) (providing for modification or revocation of supervised release); *Mujahid v. Daniels*, 413 F.3d 991, 993–95 (9th Cir.2005) (rejecting the government's argument that a petitioner's challenge to a BOP good time credit regulation was moot due to the petitioner's release from prison, because he remained "in custody" during his term of supervised release and because of the possibility that the district court would reduce the petitioner's term of supervised release). Our holding in *Sash* is directly on point. If Levine prevails on this appeal and we remand to the district court for further proceedings, the fact that the district court might, because of our ruling, modify the length of Levine's supervised release would constitute "effectual relief." A case or controversy thus

exists, as the parties, who have not raised the issue of mootness, have continued to assume.

**B. Our Jurisdiction to Hear Levine's Challenges Pursuant to 28 U.S.C. § 2241**

Our jurisdiction to issue writs of habeas corpus to federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States" is codified at 28 U.S.C. § 2241. *See Cephas v. Nash*, 328 F.3d 98, 103 (2d Cir.2003). This jurisdiction is restricted, however, by 28 U.S.C. § 2255, which governs challenges to the legality of a conviction or sentence. *Id.*; 28 U.S.C. § 2255, ¶ 1 (providing for review of challenges that a federal prisoner's "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack").

The question arises, then, whether Levine's challenge was properly labeled as a petition pursuant to 28 U.S.C. § 2241, or whether it should be reviewed as a petition under 28 U.S.C. § 2255.[2] *Cf. Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997) ("It is routine for courts to construe prisoner petitions without regard to labeling in determining what, if any, relief the particular petitioner is entitled to."). We find that a habeas petition under 28 U.S.C. § 2241 was the proper vehicle to challenge

---

**2.** The government has not challenged the labeling of Levine's petition in the present case. It has, however, been a question of some dispute in district courts. A great number of these in our circuit have found, as we also will, that § 2241 was the appropriate code section. *See, e.g., Lowy v. Apker*, 2006 WL 305760 at *1, n. 1 (S.D.N.Y. Feb.9, 2006); *Pimentel v. Gonzales*, 367 F.Supp.2d 365,

369–70 (E.D.N.Y.2005); *Franceski v. Bureau of Prisons*, 2005 WL 821703 at *2–*4 (S.D.N.Y. Apr.8, 2005); *Crowley v. Fed. Bureau of Prisons*, 312 F.Supp.2d 453, 455 (S.D.N.Y.2004); *Pinto v. Menifee*, 2004 WL 3019760 at *3 (S.D.N.Y. Dec.29, 2004); *Grimaldi v. Menifee*, 2004 WL 912099 at *2 (S.D.N.Y. April 29, 2004).

confinement in a federal correctional center rather than a CCC.

■■■ A challenge to the *execution* of a sentence—in contrast to the *imposition* of a sentence—is properly filed pursuant to § 2241. *See Chambers,* 106 F.3d at 474. Execution of a sentence includes matters such as "the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, *prison transfers,* type of detention and prison conditions." *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir.2001) (emphasis added); *see also Poindexter v. Nash,* 333 F.3d 372, 377 (2d Cir.2003); *Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001); *Chambers,* 106 F.3d at 473–75; *Boudin v. Thomas,* 732 F.2d 1107, 1112 (2d Cir.1984). This distinction between sentence validity and sentence execution is grounded in the plain language of the more specific statute, § 2255, which does not recognize challenges to the manner of carrying out a prisoner's sentence. *See United States v. Addonizio,* 442 U.S. 178, 186–87, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

The Supreme Court has indicated that "unlawful[ ] confine[ment] in the wrong institution" falls within the ambit of § 2241 habeas corpus relief, because it concerns the unlawful imposition of physical restraint. *See Preiser v. Rodriguez,* 411 U.S. 475, 486, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1974); *cf. Abdul–Malik v. Hawk–Sawyer,* 403 F.3d 72, 73 (2d Cir.2005) (considering a § 2241 habeas petition that challenged the BOP's denial of *nunc pro tunc* designation of the petitioner's state

prison as his place of imprisonment for service of his federal sentence, but not discussing the propriety of the § 2241 labeling). Similarly, several circuit courts have also included the location of confinement within § 2241 jurisdiction. *See Hernandez v. Campbell,* 204 F.3d 861, 864 (9th Cir.2000) (per curiam) ("Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court."); *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir.1991) (challenges to the place of imprisonment, and not to the fact of federal conviction, are properly brought under § 2241); *Montez v. McKinna,* 208 F.3d 862, 865 (10th Cir.2000) (finding that the aspects of a prisoner's habeas petition "focusing on where his sentence will be served, seems to fit better under the rubric of § 2241," and analyzing the petition under that statute).

■■■ Levine's petition challenges the *place* of his imprisonment, including the differences in the *manner* and *conditions* of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish CCCs from other BOP penal facilities. Levine's claim is therefore not an attack on the lawfulness of his sentence, but rather an attack on the execution of his sentence, and as such is governed by § 2241.[3] The Third Circuit has recently reached the same conclusion.[4] *See Woodall,* 432 F.3d at 242–44.

---

**3.** In *Lopez v. Davis,* 531 U.S. 230, 236, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), the Supreme Court considered a § 2241 petition challenging a BOP regulation enacted pursuant to a different aspect of the agency's authority under 18 U.S.C. § 3621. Jurisdiction was not challenged in the case, however, and

the Court did not furnish a holding on the question.

**4.** The Seventh Circuit has reached a different conclusion, and held that habeas jurisdiction could not lie in litigation challenging the BOP's placement policies, because victory in such a case could not change the petitioner's

### C.  The December 2002 Policy

Levine attacks the December 2002 Policy as contrary to the statutory commands of § 3621(b) and § 3624(c) and invalid for failure to comply with the notice-and-comment procedures of the Administrative Procedure Act, 5 U.S.C. § 553(b)-(d).  He argues that it was under the December 2002 Policy that he initially was barred from early placement in a CCC. Respondent counters that the issue of the legality of the December 2002 Policy is not justiciable in this case, since, in fact, Levine was excluded by the February 2005 Rule. We agree.

Levine surrendered to federal custody for a fifteen-month sentence on October 29, 2004.  Shortly after, on or about November 24, 2004 (thus prior to the effective date of the February 2005 Rule), the staff at the Otisville facility made a preliminary review of Levine's potential eligibility for placement in a CCC, and found that he would be eligible on or after his "10% date."  This preliminary review, however, was not binding, and no final determination was made before the promulgation of the February 2005 Rule.

As a result, the issue of whether the December 2002 Policy violated statutory commands was mooted by the promulgation of the February 2005 Rule. The new rule superseded the former policy, and it was this rule that was applied to Levine. Although Levine's CCC placement was seemingly governed by the December 2002 Policy for approximately the first 2.5 months of his sentence, Levine effectively

conceded that under BOP practices as they existed before the policy change in December 2002, he would not have been eligible for CCC placement until May of 2005.[5] By this date, he was already governed by the February 2005 Rule. Therefore, at all times relevant to this appeal, Levine was governed either by practices that preceded the December 2002 Policy—which Levine does not challenge—or by the superseding February 2005 regulation.

It follows that the alleged unlawfulness of the December 2002 Policy did not affect Levine, and therefore his claims on this issue are moot.  *See Princeton University v. Schmid,* 455 U.S. 100, 103, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) (holding that where a new regulation has superceded an old one, the "validity of the old regulation is moot, for this case has lost its character as a present, live controversy" (internal quotation marks omitted)); *see also Wilkinson v. Skinner,* 462 F.2d 670, 671–72 (2d Cir. 1972) (holding that the amendment of a prison regulation rendered challenge to constitutionality of old regulation moot).

### D.  The February 2005 Rule

■ The BOP's February 2005 Rule provides that the agency "will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a).  Levine argues that the rule contravenes unambiguously expressed Congressional intent that the BOP must

---

fact or duration of custody.  *See Richmond v. Scibana,* 387 F.3d 602, 605 (7th Cir.2004) (rejecting the applicability of § 2241 because "[a] judge could do no more than determine the extent of the Bureau's discretion to make placement decisions; the substance of any eventual decision is not at issue").  That view, however, is in tension with the line of precedents in this circuit on the scope of § 2241 claims.

5.  This is consistent with the record before us, which indicates that under the pre-December 2002 policy, inmates would not be considered for CCC placement prior to the final 180 days of their sentence, except "with extraordinary justification."  Levine makes no claim of extraordinary justification.

exercise its discretion in placing prisoners, and must do so based on the statutorily enumerated factors in § 3621(b). By promulgating a categorical rule governing all CCC placement, the BOP has exceeded its rulemaking authority, Levine contends; it has, he asserts, ignored the statutory factors calling for individualized analysis and unlawfully curtailed the agency's discretion under § 3621(b) to assign or transfer an inmate to a CCC at any time. In addition, he argues that the Rule violates the *Ex Post Facto* Clause of the Constitution.

The familiar two-part *Chevron* deference analysis guides our inquiry. *See Bell v. Reno,* 218 F.3d 86, 90 (2d Cir.2000) (citing *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). We, therefore, first examine "whether the intent of Congress is clear as to the precise question at issue." *Id.* (internal quotation marks omitted). If traditional statutory interpretation demonstrates clear Congressional intent, "that is the end of the matter," *id.*, because "[w]e will not defer to an agency's interpretation that contravenes Congress' unambiguously expressed intent," *New York Public Interest Research Group, Inc. v. Johnson,* 427 F.3d 172, 179 (2d Cir.2005) (internal quotation marks omitted) (alteration in original). If, instead, we find the statute to be "silent or ambiguous," we move to the second step of the *Chevron* analysis, and evaluate "whether the agency's answer is based on a permissible construction of the statute." *Bell,* 218 F.3d at 90. We must defer to the agency's construction of the statute "as long as that interpretation is reasonable." *Id.*

### 1. The Congressional Command

### a. The Statutory Language

The Sentencing Reform Act, 18 U.S.C § 3621(b), governs the BOP's assignment of prisoners to their place of imprisonment, as well as transfers within the federal penal system. Our analysis hence begins with the plain text of this act, and " 'where the statutory language provides a clear answer, it ends there as well.' " *See Raila v. United States,* 355 F.3d 118, 120 (2d Cir.2004) (quoting *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999)).

The statute (given in full, *supra* ) employs the word "shall," and thus obliges the BOP to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b), ¶ 1. In making this mandatory initial placement, the statute further specifies that the BOP "*may designate* any *available penal or correctional facility* that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be *appropriate and suitable, considering* [enumerated statutory factors]." *Id.* (emphasis added).

Congress's use of the language "may designate" in this provision seemingly endows the BOP with "broad discretion." *See McCarthy v. Doe,* 146 F.3d 118, 122–23 (2d Cir.1998); *see also Thye v. United States,* 109 F.3d 127, 129–30 (2d Cir.1997) ("The Bureau of Prisons has extensive latitude in assigning prisoners to correctional facilities and in assigning them within those facilities once they have arrived.") Moreover, the fact that the statute differentiates between the use of "may" and "shall" in adjacent sentences indicates the drafters' mindfulness of the significance of those terms. *See Lopez,* 531 U.S. at 240–41, 121 S.Ct. 714 (finding that the complete text of 18 U.S.C.

§ 3621 differentiates authorizations from duties by selectively using "may" and "shall"). Particularly relevant to the present appeal, similar discretion is afforded the BOP in transferring inmates. *See* 18 U.S.C. § 3621(b), ¶ 2 ("The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.")

If Congress had rested there, the BOP would have been left with unguided discretion to determine which "penal or correctional facilit[ies]" were "appropriate and suitable" for each inmate at any given time. *See Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 125 S.Ct. 2688, 2700, 162 L.Ed.2d 820 (2005) (stating the presumption that when Congress has " 'left ambiguity in a statute meant for implementation by an agency ... [it] desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.' " (quoting *Smiley v. Citibank (South Dakota), N. A.*, 517 U.S. 735, 740–41, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996))). But Congress was not silent on the criteria for placing a prisoner in an "appropriate and suitable" facility. Instead, the text stating that the BOP "may designate any available penal or correctional facility ... that the Bureau determines to be appropriate and suitable," is quickly followed by further instructions that govern how the agency must perform its placement and transfer duties. The BOP must do so "considering" and "having regard for" a list of factors.

It follows from the plain grammatical construction of the statute—the order of the sentence and the comma placed before "considering"—that the BOP's discretion to designate an inmate to a penal or correctional facility, and its determination of which facilities are "appropriate and suit-able" for that inmate, must be informed by the list of five Congressional concerns. This construction is reinforced, moreover, by Congress's instructions with respect to transfers: "The Bureau may at any time, *having regard for the same matters,* direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b), ¶ 2 (emphasis added). To read the statute otherwise—*i.e.,* to read "may designate" to render the statutory factors non-mandatory—would be to allow the discretion granted by the word "may" to eclipse the seemingly mandatory Congressional parameters for the exercise of that discretion, and render them purely hortatory. And this, two other circuit courts have (as we will also) refused to do. *See Fults,* 442 F.3d at 1092; *Woodall,* 432 F.3d at 245.

Significantly, Congress used the word "and" rather than "or" to unify its five concerns. All of the listed factors must therefore be considered. *Accord Fults,* 442 F.3d at 1092; *Woodall,* 432 F.3d at 245; *Yin Mei Ku v. Willingham,* 431 F.Supp.2d 265, 268 (D.Conn.2006); *Martin v. Willingham,* 430 F.Supp.2d 82, 86 (D.Conn.2006); *Evans v. Willingham,* 413 F.Supp.2d 155, 159–60 (D.Conn.2006); *Lesnick v. Menifee,* 05 Civ. 4719, 2005 WL 2542908, at *5 (S.D.N.Y. Oct.11, 2005); *Pimentel v. Gonzales,* 367 F.Supp.2d 365, 375 (E.D.N.Y.2005); *Baker v. Willingham,* No. 3:04CV1923, 2005 WL 2276040 at *5–*6 (D.Conn. Sept.19, 2005). After enumerating five factors, Section 3621(b) places one additional restriction on the BOP: "In designating the place of imprisonment or making transfers under this subsection, there *shall* be no favoritism given to prisoners of high social or economic status." 18 U.S.C. § 3621(b), ¶ 2 (emphasis added). Thus, as both parties agree, the BOP may not make its determinations based on prisoners' economic backgrounds.

Subject to these instructions, the statute gives the BOP the authority to transfer an inmate from one covered facility to another "at any time." 18 U.S.C. § 3621(b); *see Goldings*, 383 F.3d at 28. Section 3621(b) therefore instructs that when—at any time—the BOP assigns prisoners to "appropriate and suitable" places of imprisonment that qualify as "penal or correctional facilities," the agency must do so without socioeconomic favoritism and must consider all of the enumerated factors: the facility resources, the nature and circumstances of the conviction offense, the prisoner's history and characteristics, any recommendations of the sentencing judge, and any pertinent policy statements issued by the Sentencing Commission.[6] In sum, as found by the Third Circuit, "the statute indicates that the BOP *may* place a prisoner where it wishes, *so long as* it considers the factors enumerated in § 3621." *Woodall*, 432 F.3d at 245 (emphasis in original); *accord Fults*, 442 F.3d at 1092.

### b. The Legislative History

Given the clarity of the text, we need not turn to legislative history. Such an inquiry, however, supports our reading that the five factors are in fact mandatory but nonexclusive. Accompanying § 3621(b), the Senate Judiciary Committee issued a report speaking directly to the nature of the statutory factors. *See United States v. Gayle*, 342 F.3d 89, 94 (2d Cir.2003) ("The

most enlightening source of legislative history is generally a committee report, particularly a conference committee report, which we have identified as among the most authoritative and reliable materials of legislative history." (internal quotation marks omitted)). The report stated that "[i]n determining the availability or suitability of the facility selected, the Bureau [is] specifically required to consider such factors as [those listed in § 3621(b) ]," and that "[a]fter considering these factors," the BOP may designate a place of imprisonment or enact an inmate transfer. S.Rep. No. 98–225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3324–25; *see also Woodall*, 432 F.3d at 245–46 (quoting same). The report disavows any restriction on the BOP's exercise of discretion, but rather states that it "intends simply to set forth the appropriate factors that the Bureau should consider in making the designations." *Id.* By "specifically requir[ing]" the BOP to consider the listed factors before it makes placements and expressing intent to "set forth the appropriate factors" to be considered, the report underscores what the textual language itself makes clear: that the enumerated factors are mandatory.[7]

The question to which we must turn, therefore, is whether the agency complied with the requirements of § 3621(b) in drafting its February 2005 Rule.[8]

---

**6.** Though the construction of the statute makes these factors mandatory, we agree with Respondent that, given the general breadth of discretion afforded to the BOP, *McCarthy*, 146 F.3d at 123, they need not be exclusive. *Accord Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir.1998) (interpreting § 3621(b) as giving "the BOP ample room for judgment by listing a non-exhaustive set of factors for the BOP to consider").

**7.** The report's statement that the statute is not intended "to restrict or limit the Bureau in the exercise of its existing discretion" sup-

ports a reading of the list as non-exclusive. *See supra* note 7. The Senate report does not mention the bar against favoritism among the "specific requirements" that the BOP must consider. Nevertheless, as Respondent asserts, the plain language "there shall be no favoritism" makes this a mandatory limitation on making placements.

**8.** By the plain language of the statute, § 3621(b) permits the BOP to designate a prisoner's "place of imprisonment," but only to a "penal or correctional facility." In the past, the BOP took the view (based on the

### 2. Did the Agency Give Effect to Congressional Intent? The BOP's Exercise of its Categorical Rulemaking Authority

The February 2005 Rule at issue in this case, published at 28 C.F.R. § 570.20 and § 570.21, was announced as a "a categorical exercise of discretion under 18 U.S.C. § 3621(b)." Community Confinement, Final Rule, 70 Fed.Reg. 1659–01 (Jan. 10, 2005) (to be codified 28 C.F.R. Part 570). As the agency explained when it proposed the rule: "Because various courts have held that the Bureau has discretion under 18 U.S.C. [§ ] 3621(b) to place offenders sentenced to a term of imprisonment in CCCs, the Bureau considers it prudent to determine how to exercise such discretion." Community Confinement, Proposed Rule, 69 Fed.Reg. 51213 (Aug. 18, 2004) (to be codified 28 C.F.R. Part 570). The BOP decided that the agency would "desig-

nate[ ] inmates to community confinement only as part of pre-release custody and programming...." 28 C.F.R. § 570.20(a). And it defined this pre-release custody period as "the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a).

■ The BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility. *See United States v. Williams,* 65 F.3d 301, 307 (2d Cir.1995) (confinement to a particular facility or drug treatment program is "within the sole discretion of the Bureau of Prisons"). And, the agency's authority to interpret and administer the relevant provisions of the Sentencing Act is not contested in this case. *See Lopez v. Davis,* 531 U.S. 230, 240, 121 S.Ct. 714,

---

legal opinion of the OLC) that a CCC did not constitute a "place of imprisonment" for purposes of § 3621(b), though it conceded that CCCs are correctional facilities. *See Goldings,* 383 F.3d at 25. In *Goldings,* the First Circuit rejected this position, finding that the term "any penal or correctional facility" in the second sentence of the statute served to "give[ ] content to" the "place of imprisonment" language in the first sentence. *Id.* If CCCs were correctional institutions, as Respondent had classified them, then the court found that they were necessarily within that category of "place[s] of imprisonment" governed by the statute. *Id.*

In *Elwood* and *Woodall,* Respondent apparently abandoned the argument that CCCs are not within the category of "places of imprisonment," and it has similarly eschewed such an argument before us. Indeed, by promulgating 28 C.F.R. § 570.21 (the February 2005 Rule) under the authority of § 3621(b), the BOP necessarily places CCCs within that category of institutions governed by the statute. *See* Community Confinement, Proposed Rule, 69 Fed.Reg. 51213 (Aug. 18, 2004) ("Because various courts have held that the Bureau has discretion under 18 U.S.C. 3621(b) to place offenders sentenced to a term of imprison-

ment in CCCs, the Bureau considers it prudent to determine how to exercise such discretion."). The situation in which we find the law is thus quite different from one in which the issue to be decided was whether CCCs qualified as a "place of imprisonment" and, thus, as an "available penal or correctional facility" under the statute.

The question before us is also importantly distinct from one in which the BOP closed CCCs entirely, with the result that they were no longer "available" within the language of the statute. The agency would of course still have to meet its obligations under § 3624(c) in some other way, *i.e.,* to ensure, where practicable, that prisoners spend the last 10 per cent of their sentences (not to exceed six months) under transitional conditions preparing for the prisoners' community re-entry. *See* 18 U.S.C. § 3624(c). Apart from that restriction, we in no way suggest that the BOP must make a particular form of "re-entry" facility, like a CCC, available. But the BOP has *not* closed CCCs, thus dropping them from the roster of available "place[s] of imprisonment," *i.e.,* "penal or correctional facilities." And, since they are available, the BOP must comply with the factors made mandatory by Congress in assigning prisoners to them.

148 L.Ed.2d 635 (2001) (upholding a categorical rule promulgated by the BOP pursuant to § 3621); *Sash v. Zenk*, 439 F.3d 61, 64 (2d Cir.2006) (finding it appropriate under Supreme Court precedent for the BOP to interpret 18 U.S.C. § 3624, and other similar sentencing-administration statutes); *see also* 5 U.S.C. § 301 (granting rulemaking authority to executive agencies), 28 C.F.R. §§ 0.95(a)-(d) (delegating to BOP the authority to manage federal prisons and provide for inmate care, safety, and discipline).

The issue that is contested before us is whether § 3621(b) permits the BOP to exercise its categorical rulemaking authority so as to promulgate a *categorical* limitation on the period in which an inmate may be placed in a CCC. Respondent argues that such a categorical limitation is consistent with the BOP's broad placement discretion under § 3621(b) (as found by the First and Eighth Circuits, as well as other courts, when they struck down the December 2002 Policy). Respondent relies heavily on *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), to validate the BOP's regulation.

In *Lopez*, the Supreme Court examined a BOP rule that categorically denied early release following drug rehabilitation to a category of inmates that, under the terms of the statute, would otherwise have been eligible for such release. *See* 531 U.S. at 238, 121 S.Ct. 714. The statute at issue in the case, 18 U.S.C. § 3621(e)(2)(B), provided that the period of custody of a prisoner convicted of a nonviolent offense who completed a substance abuse program "may be reduced" by up to one year by the BOP. The BOP's categorical rule implementing this early release incentive excluded from eligibility all inmates with certain prior convictions, as well as all inmates incarcerated for a "crime of violence," as defined by the BOP. The *Lopez* Court found that

the statute granted the BOP the discretion to reduce the period of imprisonment for nonviolent offenders who satisfied a drug treatment program, but that "Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." *Lopez*, 531 U.S. at 242, 121 S.Ct. 714. Applying *Chevron* deference, the Court found that its review was limited to the issue of whether the BOP reasonably filled the statutory gap. *Id.* (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

The Court also rejected the argument that the provision required the BOP to rely on case-by-case assessments. *Id.* at 243, 121 S.Ct. 714. "'[E]ven if a statutory scheme requires individualized determinations,' which this scheme does not, 'the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'" *Id.* at 243–44, 121 S.Ct. 714 (quoting *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991)) (alteration in original). The Court found that case-by-case determinations "could invite favoritism, disunity, and inconsistency" and the agency was not required to revisit "issues that may be established fairly and efficiently in a single rulemaking proceeding." *Id.* at 244, 121 S.Ct. 714 (internal quotation marks omitted).

Relatedly, the rule in *American Hospital*, quoted by the *Lopez* court, validated "rulemaking to resolve certain issues of general applicability" that arise along the path to making ultimately individualized determinations. *Am. Hosp.*, 499 U.S. at 612, 111 S.Ct. 1539 (quoted in *Lopez*, 531 U.S. at 243–44, 121 S.Ct. 714). In that case, the Court construed the National

Labor Relations Act not to require separate determinations regarding employee bargaining units in undisputed cases, and on that basis the Court upheld the National Labor Relation Board's industry-wide rules defining appropriate bargaining units. *Am. Hosp.*, 499 U.S. at 611–12, 111 S.Ct. 1539. The regulations served the statutory goals and did not contravene any Congressional intent to curtail categorical rulemaking. *Id.* at 613, 111 S.Ct. 1539.

Moreover, in *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), a case cited by the Court in *Lopez* and in *American Hospital*, the Court considered regulations that defined the jobs available in the national economy according to a matrix of four factors enumerated by Congress in provisions of the Social Security Act. The Court, nevertheless, upheld the categorical regulations as a valid exercise of the agency's rulemaking authority to "resolve certain classes of issues. . . . that do not require case-by-case consideration." *Id.* at 467, 103 S.Ct. 1952. In doing so, the opinion repeatedly relied on the fact that the categorical determinations made by the regulations were "not unique to each claimant" and presented the "type of general factual issue" that could be resolved fairly and more uniformly through rulemaking. *Id.* at 468, 103 S.Ct. 1952. The agency was still required to hold an individual hearing for each claimant, but it was not required "continually to relitigate" particular issues that could be generalized to all applicants. *Id.* at 467, 103 S.Ct. 1952.

In each of these cases, the agencies did what they were statutorily empowered to do. In *Lopez* and *American Hospital*, the BOP and the NLRB had filled a statutory gap left by Congress and did so reasonably, in a way consistent with the statutory scheme. *See Lopez*, 531 U.S. at 242, 121 S.Ct. 714; *Am. Hosp.*, 499 U.S. at 611–12, 111 S.Ct. 1539. In *Heckler*, the Social Security Administration used the statutory factors as a basis for standards that would be applied within individual proceedings. *Heckler*, 461 U.S. at 467, 103 S.Ct. 1952.

■ What agencies may not do, however, is edit a statute. Categorical rulemaking, like all forms of agency regulation, must be consistent with unambiguous Congressional instructions. And, an agency may not promulgate categorical rules that do not take account of the categories that are made significant by Congress. *See Succar v. Ashcroft*, 394 F.3d 8, 10 (1st Cir.2005) (holding that the Attorney General cannot promulgate a regulation that categorically excludes a category of otherwise eligible aliens, because Congress had expressed clear intent as to what categories the Attorney General could consider for eligibility and what classes it could not). Though Congress left the BOP a large territory of discretion in implementing § 3621(b), it did not leave the BOP's duties undefined. The BOP is not empowered to implement selectively the instructions given by § 3621(b), by picking and choosing those factors that it deems most compelling.[9]

---

9. The BOP argues that even if we find the statute to require consideration of the enumerated factors, the agency has done so. *See* Community Confinement, Proposed Rule, 69 Fed.Reg. 51214 (Aug. 18, 2004) ("In deciding to limit inmates' community confinement to the last ten percent of the prison sentence, not to exceed six months, the Bureau has carefully considered all of the statutorily-specified factors . . . ."); *id.* at 51213 ("The Bureau will continue to make a case-by-case determination of the particular prison facility (i.e., non-community-confinement facility) to which it will designate each individual inmate."). The proposed and final rules of the contested regulations convey that the BOP considered facility resources, policy statements issued by the Sentencing Commission, and the prohibition

And this, as both the Third and Eighth Circuits have found, is precisely what the contested regulations do. *See Fults*, 442 F.3d at 1091; *Woodall*, 432 F.3d at 248. By its February 2005 Rule, the BOP has designated a certain group of offenders as categorically ineligible for placement in a certain type of facility, and it has drawn eligibility lines *solely* on the basis of one criterion: How much of the prisoner's sentence has been served? The regulation holds all prisoners who have not yet entered the pre-release phase of custody (the lesser of the final ten percent or six months) ineligible. The statutory mandate focuses on *which prisoners* are eligible for *which facilities*, but, for purposes of assignment to CCCs, the BOP answers this question using one basis only: the portion of time served.

It is worth examining, once again and in detail, why such a categorical approach is inconsistent with § 3621. When the BOP selects among prisoners and decides which facilities are "appropriate and suitable" for a prisoner, it must do so "considering" or "having regard for" the statutory factors. The balance of the term to be served is not on this list. Nor can that consideration be reasonably inferred from any possible ambiguities in the statutory factors, or from other concerns identified in § 3621 as a whole. Thus, unlike the rule at issue in *Lopez*, which the Court found to be a reflection of Congressional concerns manifested in the statutory provision, the February 2005 Rule promulgated here did not track or effectuate legislative text. *See Lopez*, 531 U.S. at 242, 121 S.Ct. 714 (finding that the BOP's regulation reflected the fact that "the statute manifests congressional concern for preconviction behavior,"

and holding that the BOP "may reasonably attend" to this concern). We read the § 3621 factors as non-exclusive, and this certainly permits the BOP to consider the portion of time served in making placements, but such an unlisted factor cannot unilaterally and categorically supplant the statutory list.

Furthermore, of the five statutory factors that must be considered, at least three—the nature and circumstances of a prisoner's offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence—are specific to individual prisoners. *See* 18 U.S.C. § 3621(b)(1)-(4). As a result, considering these factors entails individualized decisions. And this necessity distinguishes the present case from *Lopez*, in which the statutory provision at issue had no regard for the specific characteristics of individuals, other than the fact that they had completed a treatment program. *See* 18 U.S.C. § 3621(e)(2)(B); *Lopez*, 531 U.S. at 241–42, 121 S.Ct. 714 ("The constraints [the appellant] urges—requiring the BOP to make individualized determinations based only on postconviction conduct—are nowhere to be found in § 3621(e)(2)(B)."). It also distinguishes the case from *Heckler*, in which the contested rule did not *replace* individual determinations, and in which the challenged guidelines took into account each criterion identified by Congress in the statute. *Heckler*, 461 U.S. at 467, 103 S.Ct. 1952. Finally, it distinguishes the case from *American Hospital*, in which the Court construed the statute to require individualized determinations only in narrow circumstances, and in which the regulations governed "certain issues of

---

against favoritism to be its most significant concerns. *Id.* at 51214. But the BOP's assertion that it also considered the remaining factors in promulgating its rules regarding CCCs—where the regulation fails to reflect or

account for those individualized concerns in any way—is insufficient to discharge the agency's duties, given that the list of required considerations is both mandatory and inclusive.

general applicability" that did not contradict the statutory command. *Am. Hosp.*, 499 U.S. at 611–12, 111 S.Ct. 1539. By fusing the entire placement analysis with respect to CCCs into a single category grounded on the length of an inmate's remaining sentence, the February 2005 Rule eliminated from consideration each of the statutory factors that turn, instead, on the inmate's specific history.

Accordingly, and like our sister circuits, we find that 28 C.F.R. § 570.21 is an improper exercise of the BOP's rulemaking authority. Section 3621(b) establishes clear parameters for the BOP's exercise of discretion in making prison placements and transfers. By sorting prisoners' eligibility for one of the institutions on the "available penal or correctional facility" list only according to the portion of time served, the BOP has unlawfully excised these parameters from the statute.[10]

## CONCLUSION

We hold that in transferring an inmate to a CCC or any "available penal or correctional facility," the BOP must consider the factors set forth in § 3621(b), without reference to 28 C.F.R. § 570.21.

For the foregoing reasons, the dismissal of Levine's habeas challenge to the December 2002 Policy is AFFIRMED. The dismissal of Levine's habeas challenge to the February 2005 Rule is VACATED and REMANDED for further proceedings not inconsistent with this opinion.

REENA RAGGI, dissenting.

I respectfully dissent from the majority's conclusion that the Bureau of Prisons ("BOP") abused its rulemaking authority when, in 2005, it promulgated a rule (the "February 2005 Rule") allowing the designation of inmates "to community confinement *only* as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community." 28 C.F.R. § 570.20(a) (emphasis added). As part of this rule, the BOP will designate inmates to community confinement centers ("CCCs") "only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." *Id.* § 570.21(a); *see also* 18 U.S.C. § 3624(c). It will "exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A))), or shock incarceration program (18 U.S.C. § 4046(c))." 28 C.F.R. § 570.21(b).

Levine contends, and my colleagues in the majority agree, that this rule violates the relevant statutory authority set forth in 18 U.S.C. § 3621(b). In pertinent part, § 3621(b) provides:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available

**10.** Levine argues that in addition to violating the agency's statutory authority, the BOP regulations violate the *ex post facto* doctrine. *See* U.S. CONST. art. I, § 9 ("No Bill of Attainder or ex post facto Law shall be passed."). Having held in Levine's favor on other grounds, we need not consider his constitutional argument. *See Torres v. Walker,* 356 F.3d 238, 240 (2d Cir.2004); *see also United States v. Leon,* 766 F.2d 77, 78 (2d Cir.1985)

("[A] court should not reach constitutional issues when there are other, nonconstitutional grounds upon which it can resolve the case.").

In light of the foregoing, we also need not reach Levine and Amici's APA argument that the February 2005 Rule was "arbitrary and capricious" within the meaning of 5 U.S.C. § 706(2)(A).

penal or correctional facility that ... the Bureau determines to be appropriate and suitable, considering—

   (1) the resources of the facility contemplated;

   (2) the nature and circumstances of the offense;

   (3) the history and characteristics of the prisoner;

   (4) any statement by the court that imposed the sentence—

      (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

      (B) recommending a type of penal or correctional facility as appropriate; and

   (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The majority concludes that the BOP's February 2005 Rule impermissibly "edit[s]" 18 U.S.C. § 3621(b), substituting a single factor—the portion of time served—for the five factors specified in the statute for BOP consideration when designating or transferring federal prisoners. *Ante* at [84 – 85]. I construe the rule somewhat differently, specifically, as a permissible categorical rejection of CCCs as appropriate and suitable facilities for § 3621(b) designations generally, with a limited exception only for those circumstances where Congress has identified statutory considerations pursuant to 18 U.S.C. §§ 3621(e)(2)(A), 3624(c), or 4046(c), in addition to those catalogued in § 3621(b).

As the majority appears to acknowledge, nothing in § 3621(b) requires the BOP to establish CCCs or to recognize them as appropriate and suitable correctional facilities for the service of incarceratory sentences. *See ante* at [82–83] n. 8. Nevertheless, the majority concludes that, because the BOP does employ CCCs "as part of pre-release custody and programming," 28 C.F.R. § 570.20, it must consider CCCs in making every prisoner designation under § 3621(b). The majority reasons: "[T]he BOP has *not* closed CCCs, thus dropping them from the roster of available 'place[s] of imprisonment,' *i.e.,* 'penal or correctional facilities.' And, since they are available, the BOP must comply with the factors made mandatory by Congress in assigning prisoners to them." *Ante* at [83] n. 8 (quoting 18 U.S.C. § 3621(b)) (emphasis in original).[1] I cannot agree.

First, I do not understand that, under the February 2005 Rule, the BOP will cease considering all five § 3621(b) factors in making any inmate placement. The rule does not eliminate § 3621(b) factors from any placement consideration; rather, it eliminates a particular type of facility— CCCs—from among those to which a prisoner can be designated when only the five § 3621(b) factors inform the BOP's placement decision.

Second, to the extent the rule does allow CCC placements within a narrow time frame—"during the last ten percent of the prison sentence being served, not to exceed six months," 28 C.F.R. § 570.21(a)— the exception identifies no arbitrary period, but rather one in which the BOP operates under a specific congressional man-

---

1.  This reasoning suggests that the BOP could not categorically exclude CCCs from consideration in *any* designation decision, even the initial placement of prisoners convicted of murder or sentenced to terms of life imprisonment. However remote the likelihood of such an obviously inappropriate and unsuitable placement in such circumstances, today's decision appears to preclude the BOP from categorically excluding those facilities from consideration.

date. Title 18 U.S.C. § 3624(c) states that, for purposes of "Pre-release custody":

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months, of the last 10 per centum of the term to be served* under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c) (emphasis added). Plainly, this statute identifies a penalogical goal—helping prisoners prepare for their reentry into the community—that, significantly, is not mentioned in § 3621(b). *See generally Goldings v. Winn,* 383 F.3d 17, 23 (1st Cir.2004) (noting that § 3624(c) "operates as a legislative directive focusing on the development of conditions to facilitate an inmate's adjustment to free society" (internal quotation marks omitted)). Pursuant to § 3624(c), however, the BOP must serve this community reentry goal only during a particular part of an inmate's incarceratory term: the last ten percent of a prison sentence, not to exceed six months.

In light of this statutory scheme, the BOP might well conclude that (1) it does not generally consider CCCs appropriate and suitable facilities for the service of incarceratory sentences; nevertheless (2) these facilities, which are, after all, designed to promote community reentry, can usefully serve the § 3624(c) mandate. Pursuant to such conclusions, the BOP might, as it did here, promulgate a rule that categorically excludes CCCs from among the "available penal and correction-al facilit[ies]" to which it may designate or transfer prisoners, except when the BOP strives to meet other statutory obligations, such as the time-specific reentry mandate of § 3624(c). *See generally* Community Confinement, Proposed Rule, 69 Fed.Reg. 51,213, 51,214 (Aug. 18, 2004) (noting that challenged regulations were "supported by consideration of the congressional statutory policy as reflected in related statutory provisions," and stating that "[w]hether or not Section 3624(c) precludes the Bureau from designating a prisoner to community confinement for longer than the lesser of the last ten percent of the sentence or six months, it is consistent with the congressional policy reflected in that section for the Bureau to exercise its discretion to decline to designate a prisoner to community confinement for longer than that time period").

Third, unlike my colleagues in the majority, I think the BOP's categorical rejection of CCCs for general § 3621(b) designations (*i.e.,* placements not involving § 3624(c) or other statutory concerns) does find support in *Lopez v. Davis,* 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001). In *Lopez,* the Supreme Court upheld a BOP rule categorically eliminating some inmates—those with certain prior convictions, *see* 28 C.F.R. § 550.58(a)(1)(vi)(B)— from discretionary early release eligibility after successful completion of a drug treatment program under 18 U.S.C. § 3621(e)(2)(B).[2] In allowing the BOP to promulgate a rule categorically exercising its discretion, the Court noted that the statute, § 3621(e)(2)(B), was silent about how the BOP was to exercise its discretion. *See Lopez v. Davis,* 531 U.S. at 242, 121 S.Ct. 714 (noting that "[b]eyond instructing that the Bureau has discretion to

---

**2.** Section 3621(e)(2)(B) provides that the BOP may reduce by up to one year the prison term of an inmate convicted of a nonviolent felony, if the prisoner successfully completes a substance abuse program. *See* 18 U.S.C. § 3621(e)(2)(B).

reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so"). It concluded that, under such circumstances, the BOP regulation "filled the statutory gap in a way that was reasonable in light of the legislature's revealed design." *Id.* (internal quotation marks omitted). Further, and perhaps more relevant to this case, the Court observed that, " '[e]ven if a statutory scheme requires individualized determinations,' " which was not the case in *Lopez,* " 'the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.' " *Id.* at 243–44, 121 S.Ct. 714 (quoting *American Hosp. Ass'n v. NLRB,* 499 U.S. 606, 612, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991)); *see Heckler v. Campbell,* 461 U.S. 458, 467, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (holding that an agency may rely on rulemaking to "resolve certain classes of issues" despite the fact that the statute calls for individualized decisionmaking, noting that to hold otherwise "would require the agency continually to relitigate issues that may be established fairly and efficiently in a single rulemaking proceeding"). This reasoning supports the BOP's authority categorically to conclude that certain facilities, such as CCCs, are generally inappropriate and unsuitable for § 3621(b) placement, even though they can be useful when the BOP strives to achieve statutory goals in addition to those specified in § 3621(b).

The majority attempts to distinguish *Lopez* by noting that § 3621(b), unlike the statute at issue in *Lopez,* "establishes clear parameters for the BOP's exercise of discretion." *Ante* at [87]; *see Lopez v. Davis,* 531 U.S. at 242, 121 S.Ct. 714. It concludes that, where, as here, Congress has established such parameters for an agency's exercise of discretion, the "agency may not promulgate categorical rules that do not take account of the categories that are made significant by Congress." *Ante* at [85]. Because the majority concludes that, in promulgating the February 2005 Rule, the BOP "selectively" implemented "the instructions given by § 3621(b), … picking and choosing those factors that it deems most compelling," it holds the rule invalid. *Ante* at [85].

I do not understand the BOP selectively to have implemented the § 3621(b) factors in categorically rejecting CCCs for general prison designations. In its notice of proposed rulemaking, the BOP stated that "[i]n deciding to limit inmates' community confinement to the last ten percent of the prison sentence, the Bureau has carefully considered all of the statutorily-specified factors." *See* Community Confinement, Proposed Rule, 69 Fed.Reg. at 51,214. I would not reject this representation simply because the BOP did not discuss each § 3621(b) factor in its rule notice. *Cf. United States v. Fernandez,* 443 F.3d 19, 30 (2d Cir.2006) (noting that, in context of sentencing judge's consideration of § 3553(a) factors, "in the absence of record evidence suggesting otherwise," this court will "presume … that a sentencing judge has faithfully discharged her duty to consider the statutory [sentencing] factors"). As the majority acknowledges, the notice explicitly discusses two of the statutory factors, facility resources and policy statements of the Sentencing Commission, as well as the general prohibition in § 3621(b) of favoritism for inmates of high social or economic status. *See* Community Confinement, Proposed Rule, 69 Fed.Reg. at 51,-214; *ante* at [85 – 86] n. 9. Like a number of district judges in this circuit, I construe the BOP's emphasis on these factors, in

light of its represented consideration of all factors, to indicate that "the BOP has determined that [these discussed] factors categorically outweigh any of the other factors in § 3621(b) which might tend toward earlier CCC placement in an individual case." *Troy v. Apker,* No. 05–1306, 2005 WL 1661101, at *2 (S.D.N.Y. June 30, 2005) (Lynch, J.); *see also, e.g., Charboneau v. Menifee,* No. 05–1900, 2005 WL 2385862, at *6 (S.D.N.Y. Sept.28, 2005) (Mukasey, C.J.) ("Even assuming that the BOP explicitly considered only two of the five statutory factors, its designation of those factors as 'most significant' conveys an implicit judgment that such factors outweighed any other considerations, statutory or otherwise."); *Moss v. Apker,* 376 F.Supp.2d 416, 424 (S.D.N.Y.2005) (Marrero, J.) ("Nothing in § 3621(b) regulates the weight that the BOP must give to each of the factors enumerated by the statute, even if the statute were read to require BOP to give at least *some* consideration to each factor.") (emphasis in original).

Unlike the majority, I do not think this conclusion is foreclosed by the fact that three of the § 3621(b) factors—the nature of and circumstances of the prisoner's offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence—are "specific to individual prisoners" and, thus "considering these factors entails individualized decisions." *Ante* at [86]. As previously observed, *Lopez* specifically concluded that, "[e]ven if a statutory scheme requires individualized determinations, the decision-maker has the authority to rely on rule-making to resolve certain issues of general applicability." *Lopez v. Davis,* 531 U.S. at 243–44, 121 S.Ct. 714 (internal quotation marks omitted). The BOP's identification of those facilities that will be considered in making general prison designations—*i.e.,* designations not informed by statutory

mandates in addition to § 3621(b)—falls within the realm of "general applicability." The BOP might reasonably conclude, as it implicitly did here, that, regardless of an individual prisoner's offense, history, and personal characteristics, or any statement made by a sentencing judge, other factors such as the limited availability of CCC resources, the particular suitability of CCCs to other statutory mandates, the policy statements of the Sentencing Commission, and the statutory prohibition on social and economic favoritism, combine to warrant a categorical rule excluding CCC facilities from consideration in general § 3621(b) designations. Whatever the merits of this rule, it does not alter the applicability of § 3621(b)'s five factors when the BOP designates prisoners to those facilities that are deemed suitable, either generally pursuant to § 3621(b) or specifically pursuant to other statutory mandates. Accordingly, I do not consider the February 2005 Rule an invalid exercise of the BOP's rulemaking authority.

Were I in the majority in holding this view, it would perhaps be necessary to discuss further why I consider appellant's and *amici*'s other challenges unconvincing. Because I express a minority view and because the majority does not discuss these other arguments, I do not pursue these points in dissent.